UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KARL KREIG,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WAL-MART STORES, INC.,<br><br>　　　　Defendant. | CIVIL ACTION NO. 3:21-CV-00074<br><br>(MEHALCHICK, M.J.) |

## **MEMORANDUM**

Plaintiff Karl Kreig ("Kreig") initiated this action by filing a complaint in the Court of Common Pleas for Lackawanna County, Pennsylvania, on December 4, 2020, seeking damages against Defendant Wal-Mart Stores, Inc. (correctly, "Wal-Mart Stores East, L.P.," herein, "Wal-Mart") arising out of an alleged slip and fall incident on June 18, 2022. (Doc. 1-1). On January 12, 2021, Wal-Mart removed this action to the United States District Court for the Middle District of Pennsylvania. (Doc. 1). In the complaint, Kreig alleges that Wal-Mart was negligent by failing to properly maintain the men's restroom in a reasonably safe condition, resulting in Kreig's alleged slip and fall as a result of a wet floor. (Doc. 1-1, at 4). On February 23, 2021, the parties having informed the Court in their case management plan filed on February 23, 2021, of their consent to jurisdiction by a United States Magistrate Judge, the Court reassigned this action to the undersigned for all pretrial and trial proceedings in this case. (Doc. 5; Doc. 6). On April 6, 2021, the Court referred this case to medication. (Doc. 9). On September 1, 2021, the mediator filed a report with the Court indicating that settlement was not reached. (Doc. 12).

Pending before the Court is a motion for summary judgment filed by Wal-Mart on March 10, 2022. (Doc. 13). Wal-Mart asserts that Kreig fails to establish that Wal-Mart had

notice of the alleged dangerous condition which caused Kreig to allegedly slip and fall. (Doc. 14, at 11). For the reasons stated herein, Wal-Mart's motion for summary judgment will be **DENIED**. (Doc. 13).

I. **BACKGROUND AND PROCEDURAL HISTORY**

This factual background is taken from the parties' statements and counterstatements of material facts and accompanying exhibits. (Doc. 15; Doc. 19). Pursuant to Local Rule 56.1, Kreig has provided his response to Wal-Mart's statement of facts and has provided accompanying exhibits. (Doc. 19; Doc. 19-1; Doc. 19-2; Doc. 19-3; Doc. 19-4). Where Kreig disputes facts and supports those disputes in the record, as required by Local Rule 56.1, those disputes are noted. Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record. Where the record evinces a disputed fact, the Court will take notice. In addition, the facts have been taken in the light most favorable to Kreig as the non-moving party, with all reasonable inferences drawn in his favor.

On June 18, 2020, Kreig was shopping at the Wal-Mart store in Dickson City, Pennsylvania when he went to use the restroom. (Doc. 15, ¶ 1). When he entered, Kreig turned to the right to walk toward the urinals and fell to the ground after his left foot slipped out in front of him and his right foot slid to the side of him. (Doc. 15, ¶ 1; Doc. 13-2, Kreig Depo. Tr. 21:23-23:1, Oct. 11, 2021). Kreig alleged that his slip and fall was caused by water on the floor. (Doc. 15, ¶ 2; Doc. 13-2, Kreig Depo. Tr. 22:18-23, Oct. 11, 2021). Kreig testified that did not see any water before his fall and his clothes were merely damp after he fell.[1] (Doc.

---

[1] Kreig denies this statement of fact as stated. (Doc. 18, ¶ 2). Kreig states he testified that his fall was caused by water on the floor, and that while he did not see water on the floor prior to his fall, there was sufficient water on the floor to cause his clothes to be damp after he got up from the floor, and that he could feel the wetness upon his clothing. (Doc. 18, ¶ 2; Doc. 18-1, Kreig Depo. Tr. 22:1-23:1, Oct. 11, 2021).

15, ¶ 2; Doc. 13-2, Kreig Depo. Tr. 22:1-23:1, Oct. 11, 2021; Doc. 18, ¶ 2). Kreig did not see anyone else in the restroom prior to his fall. (Doc. 15, ¶ 2; Doc. 13-2, Kreig Depo. Tr. 21:16-17, Oct. 11, 2021). Kreig was shown pictures taken of the restroom on the date of the incident and agreed that the pictures represented the condition of the floor when he fell. (Doc. 15, ¶ 3; Doc. 13-2, Kreig Depo. Tr. 26:19-30:9, Oct. 11, 2021; Doc. 13-2, at 65-70).

On October 11, 2021, the parties took the deposition of Martin Anstett ("Anstett"). (Doc. 13-3). Anstett testified that he was the CAP 2 Coach or Stocking 2 Coach with the Wal-Mart store in Pittston, Pennsylvania on the date of his deposition, October 11, 2021. Doc. 15, ¶ 4; Doc. 13-3, Anstett Depo. Tr. 7:3-12, Oct. 11, 2021). Prior to the Pittston store, Anstett was a Store Manager at the Tunkhannock, Pennsylvania Wal-Mart store and Developmental Manager at the Dickson City, Pennsylvania Wal-Mart store. (Doc. 15, ¶ 4; Doc. 13-3, Anstett Depo. Tr. 7:19-8:11, Oct. 11, 2021). Anstett was working at the Dickson City Wal-Mart store on the date of the underlying incident, June 18, 2022. (Doc. 15, ¶ 4; Doc. 13-3, Anstett Depo. Tr. 12:14-24, Oct. 11, 2021). Anstett testified that the maintenance department was responsible for the maintenance of the restroom where Kreig allegedly fell. (Doc. 15, ¶ 5; Doc. 13-3, Anstett Depo. Tr. 13:2-5, Oct. 11, 2021). Anstett became aware of Kreig's incident when a "Code White" was called over the walkie-talkie system, which indicates that there was a customer incident. (Doc. 15, ¶ 6; Doc. 13-3, Anstett Depo. Tr. 13:15-20, Oct. 11, 2021). Anstett was with Assistant manager Kyle Manikowski ("Manikowski") when he received the Code White. (Doc. 15, ¶ 6; Doc. 13-3, Anstett Depo. Tr. 14:2-9, Oct. 11, 2021). Anstett responded to the Code White with Manikowski. (Doc. 15, ¶ 7; Doc. 13-3, Anstett Depo. Tr. 16:9-12, Oct. 11, 2021). When they arrived at the restroom, Manikowski entered the restroom and began taking Kreig's statement, but Anstett did not initially enter the restroom. (Doc. 15,

¶ 7; Doc. 13-3, Anstett Depo. Tr. 16:21-17:2, Oct. 11, 2021). Anstett testified that other Wal-Mart employees, Katie Simmons and Ljuba Konstantin, had also responded to the Code White. (Doc. 15, ¶ 7-8; Doc. 13-3, Anstett Depo. Tr. 17:5-20:21, Oct. 11, 2021). After entering the restroom, Anstett spoke with Kreig and asked whether he wanted a chair. (Doc. 15, ¶ 8; Doc. 13-3, Anstett Depo. Tr. 21:25-23:4, Oct. 11, 2021). Anstett testified that he looked at the restroom floor but did not observe any wetness or moisture on the floor. (Doc. 15, ¶ 9; Doc. 13-3, Anstett Depo. Tr. 24:19-26:23, Oct. 11, 2021).

On October 14, 2021, the parties took the deposition of Katie Simmons ("Simmons"). (Doc. 13-4). At the time of her deposition, Simmons worked at the Taylor, Pennsylvania Wal-Mart store as a Front End Coach, and at the time of the underlying incident, Simmons worked at the Dickson City, Pennsylvania Wal-Mart store as the Asset Protection Manager. (Doc. 15, ¶ 10; Doc. 13-4, Simmons Depo. Tr. 10:2-11:24, Oct. 14, 2021). As the Asset Protection Manager, one of Simmons' job responsibilities included investigating customer incidents and alleged injuries. (Doc. 15, ¶ 11; Doc. 13-4, Simmons Depo. Tr. 12:17-23, Oct. 14, 2021). In that role, Simmons' primary responsibility was evidence collection and preserving surveillance video of any incidents, as well as photos. (Doc. 15, ¶ 11; Doc. 13-4, Simmons Depo. Tr. 16:7-18:1, Oct. 14, 2021). As the Asset Protection Manager, Simmons did not have supervisory authority over anyone in the maintenance department. (Doc. 15, ¶ 12; Doc. 13-4, Simmons Depo. Tr. 14:11-14, Oct. 14, 2021). Simmons testified that she first heard of Kreig's alleged incident when a Code White in the men's restroom was called over the walkie-talkie system, and that she was required to respond as she was a member of management. (Doc. 15, ¶ 13; Doc. 13-4, Simmons Depo. Tr. 23:22-24:14, Oct. 14, 2021). When Simmons responded to the incident, she brought an iPad to take statements and complete the incident

investigation and entered the restroom after it was cleared of other customers by Store Lead Kyle Manikowski. (Doc. 15, ¶ 14; Doc. 13-4, Simmons Depo. Tr. 24:12-26:7, Oct. 14, 2021). Simmons testified that when she entered the restroom, Kreig was on the ground before Manikowski retrieved a chair for him to sit in and observed Kreig's footwear, which she described as "rough."[2] (Doc. 15, ¶ 15; Doc. 13-4, Simmons Depo. Tr. 27:21-29:3, Oct. 14, 2021). Simmons testified that she observed the area where Kreig allegedly fell and stated that there were water droplets on the ground and a "skid mark" where Kreig's foot slid. (Doc. 15, ¶ 16; Doc. 13-4, Simmons Depo. Tr. 32:2-33:15, Oct. 14, 2021). Simmons took photos of the restroom and its floor at the time of the alleged incident, which she authenticated at the deposition, and testified that she was unsure as to whether the photos depicted any water droplets. (Doc. 15, ¶ 16; Doc. 13-4, Simmons Depo. Tr. 33:16-36:3, Oct. 14, 2021).

On October 14, 2021, the parties took the deposition of Mark Sauers ("Sauers"). (Doc. 13-5). Sauers is currently employed at the Dickson City, Pennsylvania Wal-Mart store as a Stockers and was in the same position at the Dickson City store on the date of the underlying incident. (Doc. 15, ¶ 17; Doc. 13-5, Sauers Depo. Tr. 7:18-9:6, Oct. 14, 2021). Sauers testified that it was his understanding that he was the last person to use the restroom before the underlying incident occurred. (Doc. 15, ¶ 18; Doc. 13-5, Sauers Depo. Tr. 16:1-6, Oct. 14, 2021). Per his witness statement, Sauers did not notice any unusual amount of water on the floor when he used the restroom. (Doc. 15, ¶ 18; Doc. 13-5, Sauers Depo. Tr. 15:7-11, 17:23-22:24, Oct. 14, 2021).

On October 14, 2021, the parties took the deposition of Ljuba De La Cruz ("De La

---

[2] Kreig denies that his footwear was "rough," and states he testified that his footwear was in good order on the date of the fall. (Doc. 18, ¶ 15; Doc. 18-1, Kreig Depo. Tr. 23:2-6, Oct. 11, 2021).

Cruz"), known as Ljuba Konstantin at the time of the incident. (Doc. 13-6). De La Cruz is currently employed at the Dickson City, Pennsylvania Wal-Mart store as an Academy Lead and was in the same position at the Dickson City store on the date of the underlying incident. (Doc. 15, ¶ 19; Doc. 13-6, De La Cruz Depo. Tr. 9:19-11:11, Oct. 14, 2021). As an Academy Lead, De La Cruz has the same responsibilities as a Store Lead, although most of her job duties pertain to the training of assistant managers and hourly supervisors. (Doc. 15, ¶ 19; Doc. 13-6, De La Cruz Depo. Tr. 11:13-12:23, Oct. 14, 2021). De La Cruz does not directly have responsibility for supervising maintenance employees responsible for the upkeep of restrooms. (Doc. 15, ¶ 19; Doc. 13-6, De La Cruz Depo. Tr. 14:11-22, Oct. 14, 2021). As an Academy Lead, De La Cruz is responsible for responding to customer incidents or accidents. (Doc. 15, ¶ 20; Doc. 13-6, De La Cruz Depo. Tr. 15:19-25, Oct. 14, 2021). On June 18, 2020, De La Cruz responded to Code White at the men's restroom regarding Kreig's incident. (Doc. 15, ¶ 20-21; Doc. 13-6, De La Cruz Depo. Tr. 16:1-3, Oct. 14, 2021). After the restroom has been cleared of other customers, De La Cruz entered the restroom and observed Kreig sitting on a chair. (Doc. 15, ¶ 21; Doc. 13-6, De La Cruz Depo. Tr. 23:1-25, Oct. 14, 2021). De La Cruz testified that she learned from Simmons that Kreig alleged that water on the floor of the restroom had caused his fall. (Doc. 15, ¶ 21; Doc. 13-6, De La Cruz Depo. Tr. 24:20-25:7, Oct. 14, 2021). De La Cruz testified that she inspected the floor after learning of Kreig's allegation, but did not observe any water on the floor. (Doc. 15, ¶ 22; Doc. 13-6, De La Cruz Depo. Tr. 25:8-26:23, Oct. 14, 2021).

On October 14, 2021, the parties took the deposition of Kyle Manikowski. (Doc. 13-7). Manikowski is currently employed at the Dickson City, Pennsylvania Wal-Mart store as a Store Lead and was in the same position at the Dickson City store on the date of the

underlying incident, June 18, 2020. (Doc. 15, ¶ 23; Doc. 13-6, Manikowski Depo. Tr. 9:20-13:25, Oct. 14, 2021). Manikowski testified that the restroom at issue would have been cleaned just prior to 7 a.m. by the night shift on the date in question, which includes mopping floors, cleaning sinks and toilets, and other associated tasks. (Doc. 15, ¶ 24; Doc. 13-6, Manikowski Depo. Tr. 24:13-25:13, Oct. 14, 2021). The underlying alleged incident occurred at approximately 10:20 a.m. (Doc. 15, ¶ 24). Manikowski testified that if the restroom is mopped by maintenance, the restroom should be closed until the floor dries and maintenance is then required to place a wet floor sign before the restroom is re-opened. (Doc. 15, ¶ 25; Doc. 13-6, Manikowski Depo. Tr. 26:3-22, Oct. 14, 2021). Manikowski testified that he first learned of Kreig's alleged incident when he was informed by Sauers and he then called a Code White. (Doc. 15, ¶ 26; Doc. 13-6, Manikowski Depo. Tr. 32:9-34:18, Oct. 14, 2021). After calling a Code White, Manikowski would either personally pick up Wal-Mart's accident response iPad and first aid kit, or ask another Wal-Mart employee to do so. (Doc. 15, ¶ 26; Doc. 13-6, Manikowski Depo. Tr. 34:19-35:3, Oct. 14, 2021). Manikowski testified that after getting to the restroom, he entered and found Kreig on the floor. (Doc. 15, ¶ 27; Doc. 13-6, Manikowski Depo. Tr. 35:15-23, Oct. 14, 2021). Manikowski took Kreig's statement and Kreig stated that he "fell because of my shoes." (Doc. 15, ¶ 27; Doc. 13-6, Manikowski Depo. Tr. 37:9-22, Oct. 14, 2021). Manikowski observed Kreig's shoes and described them as dirty and "nasty, well work."[3] (Doc. 15, ¶ 27; Doc. 13-6, Manikowski Depo. Tr. 40:7-16, Oct. 14, 2021). Manikowski reviewed photographs of the restroom and confirmed that the photos accurately depicted the condition of the restroom just after Kreig's alleged fall. (Doc. 15, ¶ 28; Doc. 13-

---

[3] Kreig denies Manikowski's testimony. (Doc. 18, ¶ 27). Kreig asserts he testified that his shoes were in good order on the date of the fall and that his fall was caused by water on the restroom floor. (Doc. 18, ¶ 27; Doc. 18-1, Kreig Depo. Tr. 22:1-23:1, Oct. 11, 2021).

6, Manikowski Depo. Tr. 58:11-62:22, Oct. 14, 2021). Manikowski testified that he agreed that there was an orange caution cone below the hand dryer to the right of the sinks in the restroom and that the caution cone is placed there as a precautionary measure due to the droplets of water coming off of customers' hands while using the hand dryer.[4] (Doc. 15, ¶ 29; Doc. 13-6, Manikowski Depo. Tr. 66:13-69:2, Oct. 14, 2021).

## II. STANDARD OF LAW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*,

---

[4] Kreig denies this statement of fact as stated. (Doc. 18, ¶ 29; Doc. 18-1, Kreig Depo. Tr. 66:3-67:17, Oct. 11, 2021).

477 U.S. at 249.

In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). "The party moving for summary judgment bears the initial burden of showing the basis for its motion . . . [and i]f the movant meets that burden, the onus then 'shifts to the non-moving party to set forth specific facts showing the existence of [a genuine issue of material fact] for trial.'" *Martinez v. Triad Controls*, Inc., 593 F. Supp. 2d 741, 749 (E.D. Pa. 2009) (citing *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir.2001)). "Although the party opposing summary judgment is entitled to the 'benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact.'"[5] *Velentzas v. U.S.*, No. 4: CV -07-1255, 2010 WL 3896192, *7 (M.D. Pa. August 31, 2010) (quoting *Goode v. Nash,* 241 F. App'x 868, 869 (3d Cir. 2007) (citation omitted). The opposing party "cannot rest solely on assertions made in the pleadings, legal memorandum, or oral argument." *Goode,* 241 F. App'x at 869 (quoting *Berckeley Inv. Grp., Ltd. V. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*

---

[5] *See also Beenick v. LeFebvre,* 684 F. App'x 200, 206 (3d Cir. 2017) (stating the purpose of requiring parties to cite to particular parts of the record in their briefs about a motion for summary judgment is to "assist the court in locating materials buried in a voluminous record") (quoting Fed. R. Civ. P. 56(c)(1)(A)).

*v. Catrett,* 477 U.S. 317, 322–23 (1986); *Jakimas v. Hoffmann–La Roche, Inc.,* 485 F.3d 770, 777 (3d Cir.2007). Further, "[t]he mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment; enough evidence must exist to enable a jury to reasonably find for the nonmovant on the issue." *Turco v. City of Englewood, N.J.*, 935 F.3d 155, 161 (3d Cir. 2019) (citing *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010)).

### III. DISCUSSION

In its motion for summary judgment, Wal-Mart asserts the record does not establish that it had actual notice of an alleged harmful condition, namely water on the floor of the men's restroom, prior to Kreig's alleged fall. (Doc. 13, at 11; Doc. 14, at 15-16). In addition, Wal-Mart argues the record does not establish that the alleged dangerous condition was on the floor where Kreig fell for a sufficient amount of time such that Wal-Mart had constructive notice of the alleged dangerous condition. (Doc. 13, at 12; Doc. 14, at 15-16). Wal-Mart contends the presence of an orange caution cone placed under the hand dryers and the mere possibility of water on the floor of the restroom does not impute notice to Wal-Mart. (Doc. 13, at 12-13; Doc. 14, at 16-17). Thus, Wal-Mart asserts that because it has no actual or constructive notice regarding the alleged harmful condition that allegedly caused Kreig to fall, Kreig's negligence claims fail as a matter of law and should be dismissed. (Doc. 13, at 13; Doc. 14, at 11).

In opposition, Kreig argues the motion for summary judgment must be denied because genuine issues of material fact exist as to constructive notice. (Doc. 17, at 14-15). Specifically, Kreig asserts a genuine issue of material fact exists as to whether Sauers, an employee of Wal-Mart, created the dangerous condition that caused Kreig's fall by walking across the bathroom

and dripping water from his hands onto the restroom floor, which would, in turn, support the claim that Wal-Mart, acting through its employee, knew or should have known of the dangerous condition. (Doc. 17, at 15).

Kreig brings this premises liability action against Wal-Mart on the theory of negligence. "Negligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances." *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 980 A.2d 502, 506 (2009) (internal citations and quotation marks omitted). However, the "mere fact that an accident occurred does not give rise to an inference that the injured person was the victim of negligence." *Cox v. Wal-Mart Stores E., L.P.*, 350 F. App'x 741, 743 (3d Cir. 2009) (quoting *Swift v. Northeastern Hosp. of Philadelphia*, 690 A.2d 719, 722 (1997)). Instead, to prevail on a negligence claim, a party must establish the following:

> (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another.

*Felix v. GMS, Zallie Holdings, Inc.*, 501 F. App'x 131, 134 (3d Cir. 2012) (quoting *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005)) (affirming grant of summary judgment to defendants in a case involving a slip-and-fall at a grocery store); see *Loughtan v. The Phillies*, 888 A.2d 872, 874 (Pa. Super. 2005).

Pennsylvania courts have adopted the Restatement (Second) of Torts in determining the duty owed by a possessor of land to a person on his land. *Carrender v. Fritterer*, 469 A.2d 120, 123 (Pa. 1983). Under this approach, the standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespasser, licensee, or invitee. *Carrender*, 469 A.2d at 123 (citing *Davies v. MacDowell National Bank*, 180 A.2d 21 (Pa. 1962)). Under Pennsylvania law, visitors to a store are "business invitees," and

"[t]he duty owed to a business invitee is the highest duty owed to any entrant upon land." *Campisi v. Acme Markets, Inc.*, 915 A.2d 117, 119 (Pa. Super. Ct. 2006). Here, the parties agree that Kreig qualifies as a business invitee. (Doc. 14, at 12; Doc. 17, at 16); *see* Restatement (Second) of Torts § 332 (defining an "invitee" to include "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealing with the possessor of the land").

Possessors of land owe a duty to protect invitees from foreseeable harm only when the possessor knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees. *Carrender*, 469 A.2d at 123 (citing Restatement (Second) of Torts § 343 (1965)). In other words, an invitee must prove either the possessor of the land had a hand in creating the harmful condition or he had actual or constructive notice of such condition. *Estate of Swift*, 690 A.2d at 723 (quoting *Moultry v. Great Atl. & Pac. Tea Co.*, 422 A.2d 593, 598 (Pa. 1980)).

Wal-Mart seeks summary judgment on the theory that Kreig has not put forth sufficient evidence to show that there is a genuine dispute for trial as to whether Wal-Mart had actual or constructive notice of a dangerous or defective condition. (Doc. 13, at 11; Doc. 14, at 15-16). In slip-and-fall premises liability cases such as this one, an "invitee must prove either the proprietor of the land had a hand in creating the harmful condition, or he had actual or constructive notice of such condition." *Hower v. Wal-Mart Stores, Inc.*, No. CIV.A.08-1736, 2009 WL 1688474, at *3 (E.D. Pa. June 16, 2009).

First, Kreig has presented no evidence showing Wal-Mart had actual knowledge of water on the men's restroom floor that caused his fall, and does not argue in his brief in opposition to the motion for summary judgment that Wal-Mart had actual notice. (Doc. 17,

at 14-16). Therefore, the Court concludes that there is no genuine issue of material fact as to whether Wal-Mart had actual notice of the allegedly hazardous condition.

However, the Court finds that a genuine issue of material fact exists as to whether Wal-Mart, acting through its employee, Sauers, may have created the hazardous condition in the form of water on the restroom floor. "What exactly constitutes constructive notice of a defective or dangerous condition varies depending on the circumstances of each case." *Urrutia v. Wal-Mart Stores, Inc.*, No. 3:18-CV-01254, 2020 WL 6295037, at *6 (M.D. Pa. Oct. 27, 2020) (citing *Farina v. Miggys Corp. Five & Six*, 2010 WL 3024757 (M.D. Pa. 2010). Courts consider a variety of factors when determining whether there is evidence to support a finding of constructive notice, including: "the number of persons using the premises, the frequency of such use, the nature of the defect, its location on the premises, its probable cause, and the opportunity which the defendant, as a reasonably prudent person, had to remedy it." *Felix v. GMS, Zallie Holdings, Inc.*, 827 F. Supp. 2d 430, 437 (E.D. Pa. 2011) (quoting *Hagan v. Caldor Dep't Stores, Inc.*, No. 89-7810, 1991 WL 8429, at *4 (E.D. Pa. Jan. 28, 1991)). One particularly relevant factor is "the time elapsing between the origin of the defect or hazardous condition and the accident." *Neve v. Insalaco's*, 771 A.2d 786, 791 (Pa. Super. Ct. 2001); *see also David v. Pueblo Supermarket of St. Thomas*, 740 F.2d 230 (3d Cir. 1984) ("Circumstantial evidence that food was left on the floor for an inordinate period of time can be enough to constitute negligence."); *Cox v. Wal-Mart Stores East, L.P.*, No. 07-2391, 2008 WL 4072804, at *4 (E.D. Pa. Aug. 26, 2008) ("Constructive notice requires proof that the condition had been present long enough that, in the exercise of reasonable care, the defendant should have known of its presence."); *cf. Felix*, 827 F. Supp. 2d at 437 ("The duration of the hazard is important because if a hazard only existed for a very short period of time before causing any injury, then the

possessor of the land, even 'by the exercise of reasonable care,' would not discover the hazard, and thus would owe no duty to protect invitees from such a hazard.") (quoting Restatement (Second) of Torts § 343).

In this case, Kreig asserts:

> The men's restroom in which Mr. Kreig's accident occurred was configured with urinals and sinks on one side of the room, a hand dryer near the sink, and a second hand dryer on the wall opposite the sinks. Using this second hand dryer opposite the sinks would require a person who had washed their hands in the sink to walk across the restroom to the opposite wall. *See* Deposition of Kyle Manikowski, Exhibit B. Mark Sauers was the last person to use the restroom prior to Mr. Kreig's accident. *See* Deposition of Katie Simmons, Exhibit C. Mr. Sauers followed his typical procedure when using the restroom on the date of the accident, i.e. he washed his hands at the sink after using the restroom, and then walked across the restroom to use the hand dryer on the opposite wall. *See* Deposition of Mark Sauers, Exhibit D. Mr. Kreig was the next person to enter the restroom. As he walked across the restroom toward the urinals, he was caused to slip and fall as a result of water in the middle of the floor. *See* Deposition of Karl Kreig, Exhibit A. The presence of water on the floor was confirmed by the fact that Mr. Kreig's clothes were damp after his fall. *See* Exhibit A. The presence of water droplets on the floor was further confirmed by Katie Simmons, the Wal-Mart asset protection manager who investigated Mr. Kreig's accident. *See* Exhibit C. These facts lead to the conclusion that Mark Sauers, walking across the restroom from the sink to the hand dryer with wet hands, dripped water from his hands onto the restroom floor, creating a dangerous, slippery condition that caused Karl Kreig to fall and sustain injury.

(Doc. 17, at 15-16).

At this stage of the proceedings, Kreig's claim that Wal-Mart had constructive notice of a dangerous condition relies on the alleged existence of water on the men's restroom floor at the time of his fall. (Doc. 17, at 15-16).

It is undisputed that Kreig fell in the men's restroom of the Wal-Mart store on June 18, 2020, at approximately 10:20 a.m. (Doc. 15, ¶ 24; Doc. 13-6, Manikowski Depo. Tr. 24:13-25:13, Oct. 14, 2021). However, it is disputed whether there was water on the floor of the men's restroom and whether that water was the actual cause of Kreig's slip. During his

deposition, Kreig testified that his slip and fall was caused by water on the floor. (Doc. 15, ¶ 2; Doc. 13-2, Kreig Depo. Tr. 22:18-23, Oct. 11, 2021). Further, Kreig testified that although he did not see any water before his fall, his clothes were damp after he fell, which allegedly evidences the fact that there was water on the floor. (Doc. 15, ¶ 2; Doc. 13-2, Kreig Depo. Tr. 22:1-23:1, Oct. 11, 2021; Doc. 18, ¶ 2). Defendants argue that summary judgment is warranted because "the mere fact that there was possibly water on the floor of the restroom does not impute notice to Wal-Mart, as there is no evidence of how long the alleged water was on the restroom floor," and "if there was water on the floor, the photographs show that it was *de minimis*." (Doc. 14, at 16-17).

Upon review of the record, a dispute arises in conflicting deposition testimony regarding whether there was water droplets on the floor of the men's restroom at the time of Kreig's fall. Wal-Mart employees Anstett, Sauers, De La Cruz, and Manikowski all testified that they did not recall any water on the floor of the men's restroom on June 18, 2020. (Doc. 13-3, Anstett Depo. Tr. 24:19-26:23, Oct. 11, 2021; Doc. 13-5, Sauers Depo. Tr. 15:7-11, 17:23-22:24, Oct. 14, 2021; Doc. 13-6, De La Cruz Depo. Tr. 25:8-26:23, Oct. 14, 2021; Doc. 13-6, Manikowski Depo. Tr. 66:13-69:2, Oct. 14, 2021). Conversely, Simmons testified that there were water droplets on the floor where Kreig fell along with a "skid mark" where Kreig's shoe slipped. (Doc. 13-4, Simmons Depo. Tr. 32:2-33:15, Oct. 14, 2021).

Therefore, the Court concludes that a genuine issue of material fact exists as to whether Wal-Mart had constructive notice of the alleged hazardous condition.

## IV.   CONCLUSION

Based on the foregoing, Wal-Mart's motion for summary judgment is **DENIED**. (Doc. 13).

An appropriate Order follows.

BY THE COURT:

Dated: January 3, 2023                *s/ Karoline Mehalchick*
                                      **KAROLINE MEHALCHICK**
                                      **Chief United States Magistrate Judge**